UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   Plaintiff, | )<br>)<br>) |
| v. | )  CAUSE NO.: 2:17-CR-1-JVB-JEM |
| | )         2:21-CV-30-JVB |
| TRAVIS JAMES BARRETT<br>   Defendant. | )<br>) |

## OPINION AND ORDER

This matter is before the Court on a 28 U.S.C. § 2255 Motion [DE 117] filed by Defendant Travis James Barrett on January 19, 2021. The government filed a response on March 8, 2021, and Barrett filed a reply on April 2, 2021. After the appointment of counsel and conducting discovery, Barrett filed a supplemental brief on July 3, 2023. The government responded on October 11, 2023, and Barrett replied on November 21, 2023. The motion is now ripe for ruling. For the reasons below, the Court denies the motion.

## PROCEDURAL BACKGROUND

Barrett was charged in a two-count indictment with distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). On January 10, 2019, Barrett pled guilty to the possession count pursuant to a plea agreement. At the June 25, 2019 sentencing, the Court sentenced Barrett to 97 months of imprisonment followed by ten years of supervised release. The Court imposed restitution in the amount of $25,000 and a special assessment in the amount of $100. The distribution count was dismissed on the government's motion. Barrett appealed his conviction, and the Seventh Circuit Court of Appeals issued a decision affirming this Court's judgment on November 30, 2020.

Barrett was represented by counsel through the close of the case. From January 25, 2017, through September 13, 2017, appointed counsel Adam Tavitas represented Barrett. From September 6, 2017, through July 1, 2019, retained counsel Charles Nightingale represented Barrett. From July 1, 2019, through July 12, 2019, appointed counsel Jerome Flynn represented Barrett for the purpose of perfecting Barrett's appeal. Barrett was released from Bureau of Prisons custody on October 27, 2022.[1]

On January 19, 2021, Barrett filed his motion for § 2255 relief without the aid of counsel. The government responded on March 8, 2021, and Barrett replied on April 2, 2021. On December 2, 2022, the Court appointed counsel to Barrett, and attorney Chad Pennington with the Federal Community Defenders Office appeared on December 5, 2022. With the Court's leave, the parties engaged in discovery from February 1, 2023, to May 3, 2023.

On July 3, 2023, Barrett filed his supplement, in which he narrowed the scope of his request for § 2255 relief to two arguments of ineffective assistance of counsel. The government responded to the supplement on October 11, 2023, and Barrett replied to the supplement on November 21, 2023.

**ANALYSIS**

Title 28 section 2255(a) provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Relief under § 2255 is only appropriate for "an error of law that is jurisdictional,

---

[1] "When a former inmate still serving a term of supervised release challenges the length or computation of his sentence, his [§ 2255] case is not moot so long as he could obtain 'any potential benefit' from a favorable decision." *Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018) (quoting *United States v. Trotter*, 270 F.3d 1150, 1152 (7th Cir. 2001)). Because a favorable decision could make Barrett's supervised release less onerous, his § 2255 motion is not moot.

constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

If a petitioner "alleges facts that, if proven, would entitle him to relief," then the Court must hold an evidentiary hearing on the petition. *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (quoting *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994)). However, no hearing is needed if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The petitioner's allegations must be "detailed and specific" rather than "vague, conclusory, or palpably incredible." *Martin*, 789 F.3d at 706 (quoting *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006)). Further, it is the rule in this judicial circuit that a petitioner has not sufficiently alleged facts in support of their § 2255 petition unless they submit an affidavit showing the specific facts that support the petition. *Kafo*, 467 F.3d at 1067 (citing *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002)).

Barrett argues that he received ineffective assistance of counsel during the plea phase of his case—both in terms of plea agreement negotiation and counsel's advising of Barrett. First, Barrett argues that his counsel provided the government with passwords to Barrett's digital devices without Barrett's consent. Second, Barrett contends that his counsel failed to inform him that the "low-end" sentencing recommendation the government agreed to make as part of the plea agreement was not a recommendation for a 66-month sentence.

### A. Ineffective Assistance of Counsel Standard

Supreme Court case *Strickland v. Washington* provides the standard for ineffective assistance of counsel. 466 U.S. 668 (1984). This standard requires that "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy

3

and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003). The two parts of the standard are often called the "performance" prong and the "prejudice" prong. An ineffective-assistance claim can work as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

The performance prong is met if the challenger shows that counsel's representation "fell below an objective standard of reasonableness." *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). The review of an attorney's performance is highly deferential to mitigate hindsight bias, and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104 (internal quotation marks omitted). The *Strickland* analysis "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harris v. United States*, 13 F.4th 623, 630 (7th Cir. 2021), reh'g denied (Nov. 10, 2021) (quoting *Harrington*, 562 U.S. at 110). The Court "will not presume deficient performance based on a silent record because [the Court] presume[s] counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption. *United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002).

The prejudice prong is met if the challenger shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694).

### B. Providing Passwords

Barrett alleges that Nightingale provided the government with passwords to Barrett's electronic devices under terms other than those to which Barrett agreed. Specifically, Barrett sought to tailor the scope of the search and restrict the permitted uses of the information gained. The government does not challenge this argument in terms of performance but instead counters that Barrett is not entitled to § 2255 relief on this argument because he cannot show that he suffered any prejudice from Nightingale's actions. For this opinion and order, the Court assumes that Nightingale provided the passwords to Barrett's devices to the government without Barrett's consent and that this satisfies the performance prong of *Strickland*. The Court's analysis continues regarding whether Barrett suffered prejudice.

At its core, *Strickland*'s prejudice inquiry asks whether the result of the proceeding would have been different without counsel's deficient performance. *Missouri v. Frye*, 566 U.S. 124, 148 (2012). Barrett argues that the unconsented search of his electronic devices "appears to have been the reason" for the government not honoring a potential offer for a recommended 66-month sentence. (Suppl. at 10, ECF No. 164). Barrett's eventual plea agreement called for the government to recommend a sentence at the low end of the sentencing guideline range, which ultimately was calculated to be 97 months, and the Court in fact sentenced Barrett to a 97-month term of incarceration.

If Barrett could connect the password disclosure to the withdrawal of the offer of a recommendation for a 66-month sentence, then prejudice would be shown. However, as the Court discusses below, connecting the password disclosure to the change in plea agreement offers

5

requires a leap of logic unconnected by the supported allegations. No evidentiary hearing is needed when such a leap is needed to arrive at the petitioner's conclusion from their factual allegations. *Aleman v. United States*, 878 F.2d 1009, 1013 (7th Cir. 1989) (no hearing necessary despite petitioner's assertion that witnesses against him were undisclosed informants).

On December 5, 2017, AUSA Gary Bell emailed Nightingale, indicating that the government was "prepared to make a generous plea offer." (Ex. C. at 5, ECF No. 166). "But," Bell continued, "your client will have to provide us the password to both devices [a cell phone and iPad] and consent to search, and the search must confirm that your client did not knowingly distribute child pornography to others." *Id.* Bell clarified that "unless your client distributed child pornography, the search of the phone and iPad will not impact the potential outcome." *Id.* Bell described the plea offer as follows:

> If there is no evidence your client knowingly distributed child pornography, our offer will include: We will agree to allow your client to plead guilty to count 2; dismiss count 1 at sentencing; and the parties will recommend the Court to impose a sentence of 66 months, which is below the range recommended by the Guidelines.

*Id.* Barrett asserts that the offered deal would be honored if no evidence of distribution was found *on his devices*. The government contends that the deal requires no evidence of distribution *at all* and that the requirement of password disclosure was to aid the government in determining whether there is evidence of distribution. A plain reading of the email supports the government's interpretation and not Barrett's. Additionally, it makes little sense for the government, on the one hand, to be willing to overlook evidence of distribution anywhere but the devices but, on the other hand, to make evidence of distribution specifically on the devices a dealbreaker.

Barrett admits that there was no evidence of distribution found during the search of his devices that followed the password disclosure. (Rep. at 12, ECF No. 182). Indeed, he states that

6

the search "worked in [his] favor." *Id.* Nightingale's notes report "Lafayette Det.[2] saw no signs of distribution on either machine," (Ex. C at 6, ECF No. 166), which is corroborated by an email sent by a digital forensics investigator to AUSA Salinas reporting on the search of Barrett's devices. *See* (Ex. 1, ECF No. 179-1). The investigator makes no mention of any evidence of distribution of child pornography on either of the searched devices.

Instead, the evidence of distribution of child pornography in the record came in the form of settings on Barrett's 4shared.com profile. At the detention hearing held on January 27, 2017, the government referenced this profile and the tip it received that images containing child pornography had been uploaded to the website from an IP address that ultimately was connected to Barrett. This means that the disclosure of Barrett's passwords (which occurred about one year after the detention hearing) is not what made the government aware of Barrett's 4shared.com profile.

As reported in an email message that Barrett has submitted to the Court, the digital forensics investigator specified that the default setting for 4shared.com is for uploaded files to be private. (Ex. C at 7, ECF No. 166). The investigator determined this by creating a 4shared.com account. *Id.* The investigator continued, "So, based on the records obtained from 4shared.com, it looks like the files were set to be publicly available . . . . [Barrett] would have had to intentionally share the files since that is not an option by default." *Id.* at 8.

AUSA Salinas contacted Nightingale to set up a meeting regarding case developments on January 22, 2018. (Ex. C at 11, ECF No. 166). Nine minutes later, Salinas forwarded the email from the digital forensics investigator referenced above.

---

[2] The Lafayette, Indiana, Police Department participated in the investigation of this case. *See* (Mot. at 6, ECF No. 118).

In discovery on the instant motion, Barrett asked Nightingale stated that the government found evidence of distribution of child pornography on Barrett's devices after accessing them through the disclosed password. (Ex. A at 3, ECF No. 166). Here, though, Barrett tacitly admits that Nightingale is mistaken, as Barrett has conceded that the search of his devices yielded no evidence of distribution and the search "worked in [his] favor." (Rep. at 12, ECF No. 182). The Court finds that there is no factual question of whether evidence of distribution was found on Barrett's devices. As Barrett and the government agree, there was no evidence of distribution found on the devices.

Nightingale stated in Barrett's sentencing memorandum that "following Mr. Barrett's disclosure of his phone and tablet passwords the Government changed their recommendation to seventy-eight (78) months." (Sentencing Mem. at 30, ECF No. 66). Barrett would use this as evidence that the change in recommendation was *because of* the password disclosure and not merely *later in time* than the disclosure. The Court agrees that the government shifted from its original indication that it would recommend a 66-month sentence, but Barrett has not presented evidence of the cause of that shift beyond simple chronology. In light of the case record, merely establishing that one event occurred after another is insufficient to create a bridge over the leap of logic spanning from the password disclosure to the change in the sentencing recommendation.

Barrett admits that he needs to elicit testimony "to establish why exactly the government withdrew its settlement offer in relation to the content found on Mr. Barrett's devices." This is akin to *Aleman*, where the petitioner asserted that two witnesses against him were undisclosed informants. 878 F.2d 1009, 1012-13 (7th Cir. 1989). Aleman had no specific details to offer about the witnesses' alleged informant statuses, and his evidence in support consisted of dropped criminal charges, investigations that did not result in indictments, one witness's status as being

Aleman's unindicted co-conspirator, and government opposition to Aleman's FOIA request. *Id.* at 1013. The Seventh Circuit affirmed the trial court's decision to deny § 2255 relief without holding an evidentiary hearing.

Here, Barrett has the initial email from the government discussing a possible 66-month sentence recommendation, the disclosure of Barrett's passwords, the emails indicating that there were case developments and no evidence of distribution on Barrett's devices, and the resulting plea agreement that called for a low-end sentencing recommendation instead of a below-guidelines 66-month recommendation. Barrett insists that the unauthorized disclosure of his passwords must be the cause of the government's change in position, but this is conjecture, not fact. The evidence before the Court consistently suggests that the 66-month recommendation was available only if there was no evidence that Barrett knowingly distributed child pornography. The government's evidence of distribution came through forensic investigation separate from the investigation of Barrett's devices. On the case record, it would require too large a logical leap to accept Barrett's conclusion that he was prejudiced in the form of a harsher sentencing recommendation because of Nightingale's unauthorized disclosure of Barrett's passwords and not because of the evidence of distribution.

Accordingly, since the case record shows that Barrett is not entitled to relief, the Court denies § 2255 relief on this argument without an evidentiary hearing.

### C. "Low-End" Sentencing Recommendation

Barrett maintains that he did not know that the government would not be recommending a 66-month sentence until after the change of plea hearing. He contends that Nightingale provided ineffective assistance by not informing Barrett prior to his change of plea hearing that the 66-month

9

recommendation discussed previously with the government was not the same as the low-end recommendation provided for in the written plea agreement.

As noted in the previous section, in a December 5, 2017 email message, AUSA Gary Bell informed Nightingale that "If there is no evidence your client knowingly distributed child pornography, our offer will include: . . . the parties will recommend the Court to impose a sentence of 66 months, *which is below the range recommended by the Guidelines*." (Ex. C at 5, ECF No. 166 (emphasis added)). The plea agreement itself provides: "At the time of sentencing the United States Attorney shall recommend that I be sentenced to a period of imprisonment at the *low end of the applicable guideline range*, said guideline range to be determined by the Court." (Plea Agreement ¶ 7(b)(ii), ECF No. 40 (emphasis added)). So, to start, the Court notes that there is a shift from the original discussion (below-range recommendation) to the language of the agreement (low-end recommendation).

A defendant's sworn testimony at the change of plea hearing is presumed true. *United States v. Smith*, 989 F.3d 575, 582 (7th Cir. 2021). The defendant wishing to contradict their sworn statements must meet the "heavy burden" of providing a "compelling explanation" for the contradiction. *United States v. Merrill*, 23 F.4th 766, 770 (7th Cir. 2022). At his change of plea hearing, the following colloquy was held between the Court and Barrett:

> Q. Paragraph 7(b)(ii) [of the plea agreement] states that the government agrees to recommend that the Court impose a sentence upon you at the low end of the applicable guidelines. Do you understand that?
>
> A. Yes, Your Honor.
>
> Q. Do you also understand that the terms of Paragraph 7(b)(i) and 7(b)(ii) are only recommendations to the Court and that the Court may reject these recommendations without letting you withdraw your guilty plea and then may impose a sentence that is more severe than you may anticipate. Do you understand that?
>
> A. Yes, Your Honor.

> Q. And you discussed it all with Mr. Nightingale; is that correct?
>
> A. Yes, Your Honor.
>
> Q. The Court will determine what your sentence should be and whether to accept your plea agreement using a combination of advisory sentencing guidelines, possible authorized variances from those guidelines, and other statutory sentencing factors. Have you and Mr. Nightingale talked about how the advisory sentencing guidelines might apply in your case?
>
> A. Yes, we have, Your Honor.
>
> Q. Do you understand the Court will not be able to determine the advisory guideline sentence for your case until the probation officer prepares a presentence report and you and the government have had an opportunity to respond to the reported facts and the application of the guidelines recommended by the probation officer?
>      In other words, do you understand you are not going to be sentenced today?
>
> A. Yes, sir.

(Sentencing Tr. 22:21-23:25, ECF No. 80). The colloquy continued:

> Q. Mr. Barrett, do you have any written or verbal agreements with the government other than what is contained within the plea agreement?
>
> A. No, I do not.
>
> Q. When I read the plea agreement, I know all the promises that were made to you by the government to get you to enter into the plea agreement and plead guilty; is that correct?
>
> A. Yes, Your Honor.
>
> Q. There is nothing else?
>
> A. That's correct, Your Honor.
>
> . . .
>
> Q. Other than what is written in the plea agreement, has anyone promised you anything, anything at all, to get you to plead guilty?
>
> A. No, Your Honor.

*Id.* at 28:17-19:14.

The plea agreement made clear that the Court would determine the sentencing guideline range. Barrett stated under oath that he understood that the Court would be unable to determine the guideline range until after the presentence report was prepared. Barrett also testified that he had no agreements or promises made outside of the written plea agreement. Thus, with no compelling reason presented, Barrett is precluded from recanting his testimony at the change of plea hearing and arguing that there was an agreement outside of the written plea agreement for a recommendation of a 66-month sentence, which would be a below-guidelines sentence and not a low-end guidelines sentence.

Further, even if Barrett entered the change of plea hearing with confusion regarding the calculation of the low end of his guidelines range, the Court told him that it would not be calculated until a later time, and Barrett confirmed under oath that he understood. Even assuming deficient performance by Nightingale regarding the calculation of the low end of the sentencing range, Barrett cannot show that he was prejudiced because the Court informed him before he changed his plea to guilty that the guideline range (which the plea agreement explicitly stated would be determined by the Court) would not be calculated until after the change of plea hearing. That is, Barrett pled guilty "with his eyes open." *See Todd v. Roberson*, 827 F.3d 693, 969 (7th Cir. 2016) (finding that the colloquy at the change of plea hearing explaining possible sentences would have disabused the defendant of his asserted mistake over a sentencing cap).

As Barrett acknowledges, "[t]o show prejudice in the plea bargaining context, a defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted on going to trial.'" *United States v. Gaylord*, 829 F.3d 500, 506 (7th Cir. 2016) (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). Or, as the government concedes, Barrett can also show prejudice by showing that he would have entered a

more favorable plea agreement without counsel's errors. (Resp. at 18, ECF No. 179 (citing *Thompson v. United States*, 732 F.3d 826, 830 (7th Cir. 2013) (per curiam)).

The Court specifically asked Barrett at the sentencing hearing if he wanted to go to trial, and Barrett responded that he did not wish to go to trial but was "disappointed in the performance of prosecution" for recommending 97 months instead of 66 months. (Sentencing Tr. 64:19-65:10, ECF No. 79). Barrett does not assert, much less support with an affidavit or other evidence, that he would have entered into a more favorable plea agreement had he fully understood what the recommendation for a low-end guidelines sentence meant.

Barrett has not alleged facts that, if true, would establish the prejudice prong of an ineffective assistance of counsel claim. He is not entitled to an evidentiary hearing on the low-end guidelines sentence argument of his § 2255 petition. The Court denies § 2255 relief on this argument.

## CERTIFICATE OF APPEALABILITY

Section 102 of the Anti-Terrorism and Effective Death Penalty Act provides that a Certificate of Appealability may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473 (2000). Barrett has not made such a substantial showing, so the Court declines to enter a certificate of appealability.

## CONCLUSION

Based on the above, the Court hereby **DENIES** the 28 U.S.C. § 2255 Motion [DE 117] and **DECLINES** to enter a certificate of appealability.

SO ORDERED on March 19, 2024.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT
